## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **IN RE DIET DRUGS (PHENTERMINE/FENFLURAMINE/ DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION** | ) ) ) ) ) ) | **MDL Docket No. 1203** |
| **CATHY CHERAMIE, BRIDGETT KETCHENS, ET AL** | ) ) ) ) | **CIVIL ACTION NO. 02-20131** |
| **VERSUS** | ) ) | |
| **AMERICAN HOME PRODUCTS, ET AL** | ) ) | |

---

## MOTION FOR SUMMARY JUDGMENT

**NOW INTO COURT**, through undersigned counsel, comes Defendants, Wyeth and

Wyeth-Ayerst Pharmaceuticals, Inc. ("WAPI") (hereinafter referred to as, "Wyeth")[1], who, for

the reasons more fully set forth in the accompanying Memorandum, respectfully requests that

this Court grant their Motion for Summary Judgment, estopping plaintiff, Bridgette Ketchens,

from asserting this claim or, in the alternative, dismissing plaintiff's action pursuant to Federal

Rule of Civil Procedure 17(a) on the grounds that plaintiff is not the real party in interest to

assert this action.

---

[1] Defendant A.H. Robins Company, Inc. was merged into American Home Products Corporation ("AHPC") on August 3, 1998 and ceases to exist as a separate entity. On March 11, 2002, the name of AHPC changed to Wyeth. Thus, Wyeth will appear on behalf of A.H. Robins Company, Inc. On January 1, 1999, Wyeth Laboratories, Inc. was merged into Ayerst Laboratories, Inc. The surviving company was Ayerst Laboratories, Inc., the name of which was changed to WAPI. On June 30, 2001, Wyeth-Ayerst Laboratories, Co. ("WALCO") (improperly designated in the Petition for Damages as "Wyeth Laboratories, Co.") was merged into AHPSHC and ceased to exist as a separate entity. As a result, AHPSHC will appear on behalf of WALCo.

Respectfully Submitted:


**HENRI WOLBRETTE, III (#13631)**
**KATHLEEN A MANNING (#9101)**
**DEBORAH A VAN METER (#18479)**
**MCGLINCHEY STAFFORD, PLLC**
643 Magazine Street
New Orleans, LA 70130
Telephone: (504) 586-1200
Fax: (504) 596-2864
**Attorneys for Defendant, Wyeth,**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE DIET DRUGS (PHENTERMINE/FENFLURAMINE/ DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) **MDL Docket No. 1203** |
| CATHY CHERAMIE, BRIDGETT KETCHENS, ET AL | ) ) **CIVIL ACTION NO. 03-20126** ) |
| VERSUS | ) ) |
| AMERICAN HOME PRODUCTS, ET AL | ) |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

**NOW INTO COURT**, through undersigned counsel, comes Defendants, Wyeth and

Wyeth-Ayerst Pharmaceuticals, Inc. ("WAPI") (hereinafter referred to as, "Wyeth")[1], who

respectfully request that this Court grant their Motion for Summary Judgment, dismissing all of

the claims of plaintiff, Bridgette Ketchens, in the above captioned matter pursuant to the Federal

Rules of Civil Procedure.    Plaintiff should be judicially estopped from pursuing her claim

against Wyeth because she had clear knowledge of the facts underlying her claim against Wyeth

at the time she and her husband filed for bankruptcy relief under chapter 7 of the Bankruptcy

Code.  Nevertheless, she failed to include any possible claim against Wyeth in her bankruptcy

---

[1] Defendant A.H. Robins Company, Inc. was merged into American Home Products Corporation ("AHPC") on August 3, 1998 and ceases to exist as a separate entity. On March 11, 2002, the name of AHPC changed to Wyeth. Thus, Wyeth will appear on behalf of A.H. Robins Company, Inc. On January 1, 1999, Wyeth Laboratories, Inc. was merged into Ayerst Laboratories, Inc. The surviving company was Ayerst Laboratories, Inc., the name of which was changed to WAPI. On June 30, 2001, Wyeth-Ayerst Laboratories, Co. ("WALCO") (improperly designated in the Petition for Damages as "Wyeth Laboratories, Co.") was merged into AHPSHC and ceased to exist as a separate entity. As a result, AHPSHC will appear on behalf of WALCo.

schedules and obtained a bankruptcy discharge on the basis of these schedules.    In the alternative, because plaintiff filed for bankruptcy after the events giving rise to her claim, her claim is the property of the estate and the Chapter 7 bankruptcy trustee has exclusive standing to assert it under Federal Rule of Civil Procedure 17(a).   At a minimum, therefore, this case should be dismissed because it is not asserted by the real party in interest.   Furthermore, more than a year has elapsed since this objection was presented to plaintiff's counsel and the real party in interest has not ratified commencement of this action, nor been named or substituted as a party plaintiff.

## I.    **Background**

Pharmacy records indicate that plaintiff was prescribed Redux between March and May of 1997.[2]  A short time thereafter, plaintiff learned that Redux was being, or had been removed from the market.[3]  On December 27, 1999, plaintiff underwent an echocardiogram scheduled by her attorneys and interpreted by, William E. Shell, M.D.  Plaintiff testified that she received a copy of Dr. Shell's report, dated October 31, 2000, which shows findings of, among other things, moderate mitral valve regurgitation and pulmonary hypertension.[4]  In January 2001, plaintiff filed her "orange form No. 2," exercising immediate opt-out rights and identifying her legal counsel.[5]  She underwent a second lawyer-scheduled echocardiogram on July 21, 2001.[6]

On August 2, 2001, plaintiff and her husband filed for chapter 7 bankruptcy relief in the United States Bankruptcy Court for the Eastern District of Louisiana.[7]  Plaintiff violated her statutory disclosure duty by failing to identify her impending claim against Wyeth.   Under

---

[2] See Rite Aid Pharmacy records, attached as "Exhibit A."
[3] See Deposition of Plaintiff, Bridgette Ketchens, pages 50 – 52, attached as "Exhibit B."
[4] See Deposition of Plaintiff, Bridgette Ketchens, pages 97 – 104, attached as "Exhibit C;"  Echocardiogram Report dated 10/31/00, attached as "Exhibit D."
[5] See Orange Form No. 2, attached as "Exhibit E."
[6] See echocardiogram report, attached as "Exhibit F."
[7] See Bankruptcy Petition, Docket No. 01-16243, attached as "Exhibit G."

Schedule B, which covers personal property, plaintiff answered, "none" in response to a request for "Other contingent and unliquidated claims of any nature, including tax refunds, counterclaims of the debtor, and rights to set-off claims" and the estimated value of each.[8] Plaintiff also failed to itemize and denied the existence of any "Other personal property of any kind not already listed," in response to Item. No. 33 on Schedule B.   Item 4A of the Statement of Financial Affairs, entitled "Suits and administrative proceedings, executions, garnishments, and attachments," calls for a listing of "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case."  Again, plaintiff did not mention the MDL or any possible claim arising from her exposure to diet drugs.[9] Finally, on September 26, 2001, plaintiff's Chapter 7 trustee filed a report of no assets.[10]

Less than three months later, on December 4, 2001, plaintiff intervened in the case of *Cathy Cheramie v. American Home Products, et al.*, No. 90899 in the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana.  Plaintiff received her bankruptcy discharge on December 6, 2001[11] and the case was closed on January 28, 2002.[12]

## II.    Law and Analysis

### A.    Plaintiff's claim should be dismissed because she is judicially estopped from pursuing her claim.

Plaintiff's claim should be dismissed because it is barred under the doctrine of judicial estoppel which prohibits plaintiffs from assuming inconsistent positions in litigation. *See In re Superior Crewboats*, 374 F.3d 330 (5th Cir. 2004).  This doctrine, as applied in the bankruptcy context, was thoroughly discussed by the Fifth Circuit in *In Re Coastal Plains,* 179 F.3d 197 (5th

---

[8] See, Bankruptcy Schedule B, attached as "Exhibit H."
[9] See Statement of Financial Affairs, attached as "Exhibit I."
[10] See Schedule, attached as "Exhibit J."
[11] See Discharge, attached as "Exhibit K."
[12] See Schedule, attached as "Exhibit J."

Cir. 1999).    Two more recent Fifth Circuit opinions, *In re Superior Crewboats*, 374 F.3d 330 (5th Cir. 2004) and *Kamont v. West*, 2003 WL 22477703 (5th Cir. October 31, 2003),[13] strongly reaffirmed the Court's strict adherence to the dictates of its decision in *Coastal Plains*. These cases explain that "[t]he purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *Coastal Plains*, 179 F.3d at 207-08 (citations and quotations omitted); *see also Superior Crewboats*, 374 F.3d at 335.    Judicial estoppel is designed to protect the judicial system, rather than litigants; therefore, detrimental reliance of an opponent is not required. *Coastal Plains*, 179 F.3d at 205; *Superior Crewboats*, 374 F.3d at 335 (citations omitted).

Under 11 U.S.C. § 521(1) "bankruptcy debtors [have] an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims.*" *In Re Coastal Plains, Inc.*, 179 F.3d 197, 207-08 (5th Cir. 1999) (citing 11 U.S.C. § 521(1)) (emphasis in original).    The United States Fifth Circuit, in which the transferor court lies, has emphasized that this duty of a debtor in bankruptcy is a continuing one, requiring supplementation if facts change, and requiring disclosure of any possible claim even if contingent and unliquidated.  *Id*.  In cases such as this one, in which a debtor with clear knowledge of a potential claim fails to schedule the claim in bankruptcy, thereafter obtains a discharge, and subsequently attempts to assert the claim, the Fifth Circuit has held in no uncertain terms that the debtor is judicially estopped from asserting the claim. *See Coastal Plains*, 179 F.3d 204-13; *Superior Crewboats*, 374 F.3d 335-36.

In *Coastal Plains*, *Kamont*, and *Superior Crewboats*, the Fifth Circuit identifies three limitations on the application of judicial estoppel in the bankruptcy context:  (1) a party can only

---

[13] This case is not designated for publication.  Pursuant to Fifth Circuit Rule 47.5.4, while not precedent, unpublished opinions may be cited as persuasive authority.

be judicially estopped if the party's position is clearly inconsistent with a previous one; (2) the party must have convinced the court to accept its previous position; and (3) the party to be estopped must have acted intentionally, rather than inadvertently. *Coastal Plains,* 179 F.3d at 206, 210; *Superior Crewboats,* 374 F.3d at 335. In these decisions, the Fifth Circuit makes it clear that failure to disclose a known claim - even if contingent, unliquidated, and unasserted - satisfies the elements of judicial estoppel when the debtor, or someone standing in the debtor's shoes, subsequently attempts to assert an undisclosed claim after having obtained the benefits of a bankruptcy discharge. *Coastal Plains,* 179 F.3d at 207-09; *Superior Crewboats,* 374 F.3d at 335.

*Coastal Plain's* first prong of judicial estoppel has been satisfied in this case because bankruptcy debtors have a continuing duty to disclose all existing, contingent, and unliquidated assets. Plaintiff's claim is clearly inconsistent with her previous bankruptcy claim because plaintiff's omission of her claim against Wyeth "is tantamount to a representation that no such claim existed." *Superior Crewboats,* 374 F.3d at 335; *see also Coastal Plains,* 179 F.3d at 210. Plaintiff has also satisfied the second prong by convincing the court to accept her previous, inconsistent position because the bankruptcy court has already adopted plaintiff's denial of any pending or unasserted claims by granting a bankruptcy discharge in a supposedly "no assets" chapter 7 case. In *Superior Crewboats,* a court's acceptance of a debtor's previous position, was found to have been satisfied by the debtor obtaining a bankruptcy discharge.

Finally, plaintiff's non-disclosure of her viable personal injury claim could only be understood as intentional, rather than accidental or inadvertent. The Fifth Circuit explained that in bankruptcy cases, "a debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no

motive for their concealment." *Coastal Plains*, 179 F.3d at 211.   In *Superior Crewboats*, the Fifth Circuit found that the personal injury plaintiffs had knowledge of their claim, noting that they had initiated the suit only months after filing for bankruptcy and requested service during the pendency of the bankruptcy case.   It also found that the plaintiffs had the requisite motive to conceal the claim because they would receive a windfall by recovering on an undisclosed claim, which would not have to be shared with the creditors of the estate.   *Id.*

Like the plaintiffs in *Superior Crewboat*, the fact that Bridgette Ketchens filed her personal injury claim only months after filing for bankruptcy relief indicates that she had knowledge of her Redux claim at the time that she concealed it.   Moreover, the fact that plaintiff underwent two attorney-scheduled echocardiograms *prior* to filing for bankruptcy further reveal her knowledge of the existence of this claim.   This case presents an even stronger case for application of judicial estoppel than did the case presented in *Superior Crewboats,* because the plaintiffs in *Superior Crewboats* claimed they had doubts as to the viability of their claim.   Here, the facts show that plaintiff had no reason to believe that her claim was not viable because she knew that she had taken Redux; knew about its recall; contacted an attorney; scheduled an echocardiogram; received the results; opted out of settlement rights; and scheduled an additional echocardiogram – all before filing her bankruptcy claim.

Additionally, like the plaintiffs in *Superior Crewboats*, Bridgette Ketchens had the requisite motive to conceal her claim because she would not be required to share any recovery with creditors of the estate.

Significantly, the Fifth Circuit's decision in *Coastal Plains* recognizes that the Third Circuit's case law, the circuit in which the MDL is pending, is in accord with that of the Fifth

Circuit. *See Coastal Plains*, 179 F.3d at. 211-12 (discussing Third Circuit cases of *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3 Cir. 1996); and *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3 Cir.), *cert. denied* 488 U.S. 967 (1988)); *see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314 (3 Cir. 2003). Indeed, the Bankruptcy Court in the very same district in which the MDL is pending has also recognized this same principle of estoppel. *In Re Okan's Foods, Inc.*, 217 B.R 739 (Bankr. E.D. Pa. 1998).

### B.    Plaintiff is not the real party in interest to assert her pre-petition claim against Wyeth

Alternatively, plaintiff's action should be dismissed because she is not the real party in interest to pursue her cause of action. Pursuant to 11 U.S.C. § 541(a), all causes of action belonging to a debtor at the commencement of a bankruptcy case become property of the bankruptcy estate. Pursuant to Rule 6009 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 323, only the trustee in a chapter 7 case has the capacity to sue or be sued on behalf of the estate. *See Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302 (5 Cir. 2001); *Feist v. Consolidated Freightways Corp.*, 100 F. Supp. 2d 273 (E.D. Pa. 1999); *Krank v. Utica Mut. Ins. Co.*, 109 B.R. 668 (E.D. Pa. 1990); and *Cain v. Hyatt*, 101 B.R. 440, 442 (E.D. Pa. 1989).

In the present situation, the facts clearly show that plaintiff's claim arises out of events that took place before she filed her Chapter 7 bankruptcy petition. As a result, her claim is the property of the bankruptcy estate and the bankruptcy trustee is the real party in interest to assert the claim. Since Federal Rule of Civil Procedure Rule 17(a) requires every action to be pursued in the name of the real party in interest, and the bankruptcy trustee has not been named as a party, plaintiff's claims against Wyeth should be dismissed. Moreover, after plaintiff

acknowledged her bankruptcy during the course of deposition testimony,[14] this objection was presented to plaintiff's counsel by letter dated March 25, 2004.[15]  Nevertheless, more than a year has passed without the bankruptcy trustee ratifying the action, joining, or being substituted as a party plaintiff. *See* Fed. R. Civ. P. 17(a).

## C.  **Wyeth is entitled to Summary Judgment as a matter of law.**

Under Federal Rule of Civil Procedure 56(c), a motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories on file, and affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986).

Here, it is undisputed that, like the debtors in *Coastal Plains* and *Kamont*, Ms. Ketchens clearly knew the facts underlying her claim at the time of her bankruptcy case *and* had a motive to conceal those claims.  She was able to have a significant amount of debt discharged, without sharing proceeds of a settlement or recovery against Wyeth with her creditors.  Therefore, plaintiff should be estopped from circumventing the law put in place to protect the integrity of the judicial process by asserting her claim against Wyeth and her claim should be dismissed.

It is also clear that in circumstances such as these, the debtor has no standing to assert any pre-petition claims.  Rather, such claims must be asserted by the trustee. *See Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302 (5 Cir. 2001).  This principle is also honored in Louisiana state courts, the courts from which Ms. Ketchens' case was removed. *See Trowbridge v. Fascio*, No.

---

[14] See Deposition of Bridgette Ketchens, 244-45, attached as "Exhibit L."
[15] See 3/25/04 Letter to B. Martinez, attached as "Exhibit M."

98-C-1311, 718 So.2d 1025 (La. App. 4 Cir. 9/9/98); and *Jones v. Chrysler Credit Corp.*, 417 So.2d 425 (La. App. 1Cir.), *writ denied*, 420 So.2d 456 (1982), *cert. denied*, 459 U.S. 1114 (1983). The same is true of the U.S. Third Circuit and the Eastern District of Pennsylvania. *See, e.g.*, *Feist*, 100 F. Supp. 2d at 274-75; and *Krank*, 109 B.R. at 669.

## III.   Conclusion

Wyeth, as the moving party, has met its burden of showing that there is no genuine issue as to material fact. The only issues that remain involve questions of law. As discussed above, it is well-settled that a claimant cannot deny the existence of a pre-existing claim in a bankruptcy proceeding, and thereafter assert the claim in a subsequent proceeding, to the detriment of her creditors. Therefore, plaintiff should be judicially estopped from asserting her claim. In the alternative, plaintiff's claim should be dismissed because she is not the real party interest to assert this cause of action which belongs to the bankruptcy trustee. For all of the above-stated reasons, Defendant, Wyeth, respectfully requests that this court grant its Motion for Summary Judgment, dismissing the plaintiff's claims against it, with prejudice, and at plaintiff's cost.

Respectfully Submitted:

**HENRI WOLBRETTE, III (#13631)**
**KATHLEEN A MANNING (#9101)**
**DEBORAH A VAN METER (#18479)**
**MCGLINCHEY STAFFORD, PLLC**
643 Magazine Street
New Orleans, LA 70130
Telephone: (504) 586-1200
Fax: (504) 596-2864
**Attorneys for Defendant, Wyeth**

550506.2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE DIET DRUGS** ) | |
| **(PHENTERMINE/FENFLURAMINE/** ) | **MDL Docket No. 1203** |
| **DEXFENFLURAMINE) PRODUCTS** ) | |
| **LIABILITY LITIGATION** ) | |
| ) | |
| **CATHY CHERAMIE,** ) | **CIVIL ACTION NO. 02-20131** |
| **BRIDGETT KETCHENS, ET AL** ) | |
| ) | |
| **VERSUS** ) | |
| ) | |
| **AMERICAN HOME PRODUCTS, ET** ) | |
| **AL** | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion for Summary

Judgment, and accompanying Memorandum and Statement of Material Facts, have been served

on the following, this _____ day of _____, 2005.

_____
DEBORAH VAN METER

Kim E. Moore, Esq.
400 Poydras Street
Suite 2700
New Orleans, LA 70130

Terry Christovich Gay, Esq.
Suite 2300
601 Poydras Street
New Orleans, LA 70130-6078

Jason Cashio, Esq.
22nd Floor, One American Place
P. O. Box 3513
Baton Rouge, LA 70821

Stephanie McShane, Esq.
Suite 1250
1100 Poydras Street
New Orleans, LA 70163-1250

Stanton E. Shuler, Jr., Esq.
Suite 1700
1100 Poydras Street
New Orleans, LA 70163-1701

Deborah Schroeder, Esq.
LAMMICO
111 Veterans Blvd., Suite 1710
Metairie, LA 70005

W. Luther Wilson, Esq.
Taylor Porter Brooks
 & Phillips, L.L.P.
451 Florida Street, 8th Floor
Baton Rouge, LA 70801

Robert G. Harvey, Sr., Esq.
Tamara Kluger Jacobson, Esq.
Mark P. Glago, Esq.
2609 Canal Street, Fifth Floor
New Orleans, LA   70119

Darleen Jacobs, Esq.
Jacobs & Sarrat
823 St. Louis Street
New Orleans, LA   70112

Rick Laminack, Esq.
O'Quinn & Lamminack
440 Louisiana Street
Suite 2300
Houston, TX 77002

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **IN RE DIET DRUGS (PHENTERMINE/FENFLURAMINE/ DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION** ) ) ) ) ) ) | **MDL Docket No. 1203** |
| **CATHY CHERAMIE, BRIDGETT KETCHENS, ET AL** ) ) ) | **CIVIL ACTION NO. 02-20131** |
| **VERSUS** ) ) ) | |
| **AMERICAN HOME PRODUCTS, ET AL** ) ) | |

## STATEMENT OF UNCONTESTED MATERIAL FACTS

Defendants, Wyeth and Wyeth-Ayerst Pharmaceuticals, Inc. ("WAPI") (hereinafter referred to as, "Wyeth")[1] respectfully submit the following statements of uncontested material facts in Support of their Motion for Summary Judgment:

(1)    Plaintiff, Bridgette Ketchens was prescribed Redux between March and May of 1997 and had those prescriptions filled at Rite Aid Pharmacy.

(2)    An echocardiogram was performed on Bridgette Ketchens on December 27, 1999 and interpreted by William, E. Schell, M.D. on October 31, 2000 to show findings of moderate  mitral valve regurgitation and pulmonary hypertension.

---

[1] Defendant A.H. Robins Company, Inc. was merged into American Home Products Corporation ("AHPC") on August 3, 1998 and ceases to exist as a separate entity. On March 11, 2002, the name of AHPC changed to Wyeth. Thus, Wyeth will appear on behalf of A.H. Robins Company, Inc. On January 1, 1999, Wyeth Laboratories, Inc. was merged into Ayerst Laboratories, Inc. The surviving company was Ayerst Laboratories, Inc., the name of which was changed to WAPI. On June 30, 2001, Wyeth-Ayerst Laboratories, Co. ("WALCO") (improperly designated in the Petition for Damages as "Wyeth Laboratories, Co.") was merged into AHPSHC and ceased to exist as a separate entity. As a result, AHPSHC will appear on behalf of WALCo.

(3)    On January 15, 2001, Bridgette Ketchens signed "Orange Form #2," acknowledging her intent "to exercise intermediate opt-out right under the settlement agreement with American Home Products Corporation."

(4)    A second echocardiogram was performed on Bridgette Ketchens on July 21, 2001 and interpreted by Gabriel P. Lasala, M.D. to show mild mitral regurgitation and mild aortic and pulmonic insufficiency.

(5)    Roland A. Ketchens Sr. and Bridgette Ketchens filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Louisiana on August 2, 2001, seeking relief under Chapter 7 of the Bankruptcy Code.

(6)    On Bankruptcy Schedule B, dated August 1, 2001, which covered personal property, Roland A. Ketchens Sr. and Bridgette Ketchens answered "None," in response a question requesting "Other contingent and unliquidated claims of any nature, including tax refunds, counterclaims of the debtor, and rights to set-off claims" and the estimated value of each."

(7)    On Bankruptcy Schedule B, Item 33, Roland A. Ketchens Sr. and Bridgette Ketchens failed to itemize and denied the existence of any "Other personal property of any kind not already listed."

(8)    In response to item 4A on the Statement of Financial Affairs, dated August 1, 2001, which called for a listing of "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case," Roland A. Ketchens Sr. and Bridgette Ketchens

did not mention the MDL or any possible claims arising from Bridgette Ketchens' exposure to Redux.

(9)  Roland A. Ketchens Sr. and Bridgette Ketchens' Chapter 7 trustee filed a Report of No Assets on September 26, 2001.

(10) Bridgette Ketchens intervened in the case of *Cathy Cheramie v. American Home Products, et al*, No. 90899 in the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana on December 4, 2001.

(11) Roland A. Ketchens Sr. and Bridgette Ketchens received a bankruptcy discharge on December 6, 2001.

(12) Roland A. Ketchens Sr. and Bridgette Ketchens' bankruptcy case was closed on January 28, 2002.

(13) Bridgette Ketchens never scheduled or revealed the existence of her Redux claim during the bankruptcy proceedings.

(14) Bridgette Ketchens' Chapter 7 bankruptcy trustee is not a party to the above-captioned suit.

Respectfully Submitted:

**HENRI WOLBRETTE, III (#13631)**
**KATHLEEN A MANNING (#9101)**
**DEBORAH A VAN METER (#18479)**
**MCGLINCHEY STAFFORD, PLLC**
643 Magazine Street
New Orleans, LA 70130
Telephone: (504) 586-1200
Fax: (504) 596-2864
**Attorneys for Defendant, Wyeth**

01/01/01
11:34:77

PAGE: 1

RITE AID CORPORATION
HARRISBURG OFFICE
HARRISBURG, PA. 17011-0000
(000) 000-0000

CUSTOMER HISTORY REPORT
01/01/96 TO 01/01/98

KETCHENS, BRIDGETTE
125 MEADOWS CIR
THIBODAUX, LA. 70301-7129
(504) 447-5422

| RX | RF | DATE | NDC PH INIT | DESCRIPTION CLAIM REF NBRS | QTY DISP | DAYS SUPPLY | RETAIL PRICE | CUST PAID | DOCTOR | INSTRUCTION | STORE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 733813 | | 03/31/97 | 0000809040I 111 | REDUX 15MG CAPSULE | 30.00 | 15 | $38.26 | $38.26 | COOPER, MICHAEL W. | TAKE 1 CAPSULE TWI | 07278 |
| 738246 | | 05/10/97 | 0002915252Z 111 | BACTROBAN 2% OINTMENT | 15.00 | 5 | $17.68 | $10.00 | COOPER, MICHAEL W. | APPLY THREE TIMES | 07278 |
| 738245 | | 05/10/97 | 0000809040I 111 | REDUX 15MG CAPSULE | 30.00 | 15 | $38.26 | $38.26 | COOPER, MICHAEL W. | TAKE 1 CAPSULE TWI | 07278 |
| | | | | | | | $94.20 | $86.57 | | | |

I certify that these medications were dispensed to the above by order of their personal physician

Records Custodian Signature: _____

Date: 1/3/61

* PAID ONLINE BY CREDIT CARD AT DRUGSTORE.COM


DEFENDANT'S
EXHIBIT
A

BRIDGETTE KETCHENS          FEBRUARY 16 , 2004   CHERAMIE  VS  AMERICAN HOME PRODUCTS

1 (Pages 1 to 4)

---

**Page 1**

```
1              UNITED STATES DISTRICT COURT
2              EASTERN DISTRICT OF LOUISIANA
3
4
       MDL No. 1203    U.S.D.C. LA E.D. No. 02-0147
5
6
7   * * * * * * * * * * * * * * * * * * * * * * * * *
8   CATHY CHERAMIE (PORCHE INTERVENTION)
9                      VERSUS
10     AMERICAN HOME PRODUCTS et al.
11  * * * * * * * * * * * * * * * * * * * * * * * * *
12
13
        Deposition of BRIDGETTE KETCHENS taken on
14
   Monday, February 16, 2004 at the law offices of Adams
15
   and Reese, 4500 One Shell Square, 701 Poydras Street,
16
   New Orleans, Louisiana, 70139, beginning at 3:20 p.m.
17
18
19
20
21
        Reported by:
22
           Dorothy H. Schmit
23           Certified Court Reporter
24
25
```

---

**Page 2**

```
1   APPEARANCES:
2
3   Representing the Plaintiff:
4      O'QUINN LAMINACK & PIRTLE
       Attorneys at Law
       BY:  SUSAN EARNEST, ESQ.
5      2752 Canal Street
       New Orleans, LA 70119
6
7   Representing the Defendant:
8      McGLINCHEY STAFFORD PLLC
       Attorneys at Law
       BY: CHARLES R. PENOT, ESQ.
9      643 Magazine Street
       New Orleans, LA 70130
10
    Representing Rugby Laboratories and Geneva
11  Pharmaceuticals:
12     LEAKE & ANDERSSON LLP
       Attorneys at Law
13     BY: KENDRA L. DUAY, ESQ.
       1700 Energy Centre
14     1100 Poydras Street
       New Orleans, LA 70163-1701
15
16
17
18
19
20
21
22
23
24
25
```

---

**Page 3**

```
1                        INDEX
                                            Page
2   Caption . . . . . . . . . . . . . . . . . . . .  1
    Appearances . . . . . . . . . . . . . . . . . .  2
3   Agreement of Counsel. . . . . . . . . . . . . .  4
    Examination:
4      By Mr. Penot . . . . . . . . . . . . . .9, 244
       By Ms. Duay  . . . . . . . . . . . . . . 236
5   Objections:
       By Ms. Earnest . . . . .  33, 55, 56, 66, 67, 68,
6       . . . . . 181, 195, 204, 206, 209,
            . . . . . . . . 211, 212, 221, 231
7   Exhibits:
       Ketchens 1 Request for Production . . . . . . 200
8      Ketchens 2 Plaintiff's Fact Sheet . . . . . . 204
    Reporter's Certificate. . . . . . . . . . . . . . 247
9   Corrections/ Changes and Witness' Certificate . . . 248
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

---

**Page 4**

```
1              S T I P U L A T I O N
2
3          It is stipulated and agreed to by and among
4      counsel that the deposition of Bridgette Ketchens,
5      pursuant to Notice, is hereby taken for all discovery
6      purposes permitted under the applicable Louisiana Code
7      Civil Procedure.
8          That the formalities, except those of reading
9      and signing, are hereby waived; and
10         That all objections, except those as to the
11     form of the question and/or the responsiveness of the
12     answer, are reserved until such time as this
13     deposition, or any part thereof, may be used or sought
14     to be used in evidence.
15
16
17             * * * * *
18
19         Dorothy H. Schmit, Certified Court Reporter,
20     officiated in administering the oath to the herein
21     witness.
22
23
24
25
```

DEFENDANT'S
EXHIBIT
B

---

ASSOCIATED REPORTERS, INC.
504-529-3355

51a98fd4-deec-4d77-9222-c5c9c6dd7a6b

BRIDGETTE KETCHENS                FEBRUARY 16, 2004  CHERAMIE VS AMERICAN HOME PRODUCTS

13 (Pages 49 to 52)

Page 49

1      A. No. He just gave me a prescription.
2  And he gave me some sheets of calorie diets,
3  low calorie diets. That's all I can
4  remember.
5      Q. So did he explain to you how it
6  would work?
7      A. He told me take one pill a day.
8      Q. If your records reflected that it
9  was two pills a day, does that sound right
10  to you?
11     A. I don't think it was two pills a
12  day.
13     Q. It's your recollection that whatever
14  he gave you, you took only one a day of?
15     A. However he told me to take it,
16  that's how I took it.
17     Q. Okay. The records reflect that he
18  said one twice a day. Does that sound
19  right?
20     A. If that's what it says; I don't
21  know.
22     Q. Since the time that you have taken
23  Redux, do you know anybody else that has
24  taken Redux?
25     A. No.

Page 50

1      Q. Have other than your lawyers and Dr.
2  Cooper - So exclude lawyers; exclude Dr.
3  Cooper. Have you talked to anybody since
4  that day till right now, have you talked to
5  anybody about Redux?
6      A. My husband.
7      Q. Okay. What did you and your husband
8  talk about, about Redux?
9      A. Well, we talk about what we're hear
10  on the news, and we talked about me stopping
11  the pills when I stopped them, and just
12  normal stuff.
13     Q. Did you hear something on the news
14  about Redux, you personally? Not your
15  husband for the moment.
16     A. Yes.
17     Q. What did you hear?
18     A. That they were taking them off the
19  market.
20     Q. Were you off of the Redux by then?
21     A. If I can remember, I had stopped
22  taking them by then.
23     Q. How did you hear that? When you say
24  it was in the news, was it something you
25  read, something you heard on the television

Page 51

1  or radio?
2      A. On TV.
3      Q. Okay. You watch local or national
4  news on television?
5      A. Sometimes both.
6      Q. At this time you were living in
7  Thibodeaux; is that right?
8      A. Yes.
9      Q. Do you remember any particular
10  network or station that it was that you used
11  to get your news from at the time?
12     A. I always watch 4, 6, or 8, or CNN.
13  It just depends.
14     Q. So it could have been any of the
15  local stations or it could have been CNN is
16  what you're telling me.
17     A. Right.
18     Q. In Thibodeaux, they get all the same
19  local news we get here?
20     A. Yeah.
21     Q. Okay. They don't have a local
22  Thibodeaux station, right?
23     A. I don't think so. I think it's New
24  Orleans or Baton Rouge channel.
25     Q. Sure. Had your husband heard

Page 52

1  anything about Redux that you hadn't heard?
2  I mean, did he tell you something that you
3  were unaware of? is the way I should ask it.
4      A. No.
5      Q. He heard the same things in the news
6  and you guys just talked about it. Is that
7  what you're telling me?
8      A. Correct.
9      Q. Any other sources of information
10  that you have in your hand right now about
11  Redux, other than from your lawyers or other
12  than from Dr. Cooper, and this news show
13  that you heard about it coming off the
14  market?
15     A. That's it.
16     Q. Did Dr. Cooper explain to you any
17  possible side effects of the drugs?
18     A. Not that I can recall.
19     Q. He didn't talk to you about
20  shortness of breath or heart palpitations or
21  dizziness or anything like that?
22     A. Not that I recall, no.
23     Q. Did he say anything about "If you
24  experience any symptoms, you should come
25  back to me"?

BRIDGETTE  KETCHENS                    FEBRUARY  16 , 2004  CHERAMIE  VS  AMERICAN HOME PRODUCTS

25 (Pages 97 to 100)

Page 97

```
 1        before.
 2            Q   Okay.  You've had two.
 3        A   Yes.
 4            Q   Where was the first one?
 5        Physically, where did you go for it?
 6        A   In New Orleans on Canal Street.
 7            Q   And your lawyers scheduled that for
 8        you; is that correct?
 9        A   That's correct.
10            Q   And was the name of the place Metro
11        Wellness?
12        A   Yes.  I did go to Metro Wellness.
13            Q   And how did you go there?
14        A   In my car.
15            Q   Anybody go with you?
16        A   No.
17            MR. PENOT:
18                An aside for a moment.  You
19            still drive?
20            THE WITNESS:
21                Yes.
22            MR. PENOT:
23                Do you have a handicap --
24            THE WITNESS:
25                No.
```

Page 98

```
 1            MR. PENOT:
 2                - license plate?
 3            THE WITNESS:
 4                No.
 5            MR. PENOT:
 6                Did you drive here today?
 7            THE WITNESS:
 8                My husband drove me here today.
 9            MR. PENOT:
10                Okay.
11        BY MR. PENOT:
12            Q   Okay.  So you drove and no one went
13        with you; is that right?
14        A   That's correct.
15            Q   Tell me everything you remember
16        about that process from the moment you
17        walked in the door until the moment you
18        walked out.
19        A   I walked in; I had to sign in.  And
20        I sat and waited till they called my number.
21        And then I went in and had the test taken
22        and I left.
23            Q   When you were sitting in the waiting
24        room and waiting, were there other people
25        there?
```

Page 99

```
 1        A   Yes, there were.
 2            Q   Did you talk to any of them?
 3        A   No.
 4            Q   About how long did it last from the
 5        moment you got called into the back until
 6        the time that you left?
 7        A   You mean the test part itself?
 8            Q   From the time they said "Ms.
 9        Ketchens, come in the back" until the time
10        you walked out of there.
11        A   I can't say exactly.
12            Q   Rough estimate.
13        A   Maybe an hour.  I don't remember
14        exactly.
15            Q   You know you said often they give
16        you some papers to fill out when you go to a
17        doctor's office.  Did they do that there?
18        Did you have to sit and fill out some papers
19        while you were waiting?
20        A   I think I just had to sign my name.
21            Q   So you think you didn't fill out -
22        A   I don't think I did.
23            Q   Did anyone take a medical history
24        from you even if you didn't sit and
25        physically fill it out?  Did they sit and
```

Page 100

```
 1        ask you questions about a medical history?
 2        A   No.
 3            Q   Did you see a doctor while you were
 4        there?
 5        A   No.
 6            Q   How many people were working there
 7        that you saw?
 8        A   I have no idea.
 9            Q   How many did you interact with that
10        were working there?
11        A   Two.
12            Q   Men or women or both?
13        A   I think it was a lady that was up
14        front where I signed my name at.  And it was
15        a lady, if I can remember, that did the
16        test.
17            Q   Okay.  So one was sitting up at the
18        front, like a receptionist sort of person?
19        A   Right.
20            Q   When the person who actually
21        performed the procedure on you, was that the
22        person who came and took you to the back?
23        A   Yes.
24            Q   Did anyone there weigh you?
25        A   No.
```

DEFENDANT'S
EXHIBIT
C

51a98fd4-

BRIDGETTE KETCHENS                FEBRUARY 16, 2004  CHERAMIE  VS  AMERICAN HOME PRODUCTS

26 (Pages 101 to 104)

Page 101

1    Q   Take your blood pressure?
2    A   No.
3    Q   Listen to your heart?
4
5    A   No.
6    Q   Okay.  So you go in the back; you
7    lay down and you have this procedure done;
8    is that right?
9    A   That's correct.
10   Q   Did the person who was performing
11   the procedure tell you anything about what
12   - You said "she"?
13   A   She.
14   Q   - she was seeing on the test?
15   A   No.
16   Q   Did anyone by the time you walked
17   out the door that day tell you the results
18   of your test?
19   A   No.
20   Q   Have you subsequently learned the
21   results of that test?
22   A   Yes.
23   Q   How?
24   A   I got a letter in the mail.
25   Q   Did you read that?

Page 102

1    A   Yes.
2    Q   Was the letter from the doctor?
3    A   No.
4    Q   It was from your attorneys?
5    A   Yes.
6    Q   Okay.  I don't want to know anything
7    about the letter from your attorneys.  With
8    the letter from your attorneys, was there
9    results of the test by a doctor?
10   A   Yes.
11   Q   Did you read that?
12   A   Yes.
13   Q   What is your understanding?
14   A   You mean -
15   Q   Of the test results.  Don't tell me
16   about what your lawyer's letter, but what's
17   your understanding of what the test results
18   said?
19   A   Mitral valve, I think it was,
20   regurgitation and mild something.  I don't
21   know.
22   Q   Mild pulmonary hypertension?
23   A   I think so.
24   Q   Okay.  Is your understanding that
25   you just gave me, is that from your reading

Page 103

1    of those test results?  Or did you have
2    anybody explain those test results to you?
3    A   No.  Just what I can remember
4    reading on the paper.
5    Q   Okay.  Do you still have those test
6    results?
7    A   No.
8    Q   What did you do with them?
9    A   It got mixed up in junk and I don't
10   know.
11   Q   But you know that you don't have it.
12   A   I don't have it.  I don't think I
13   have it, no.
14   Q   Do you remember a doctor's name on
15   it?
16   A   No.
17   Q   Does the name Dr. William Shell
18   sound familiar?
19   A   No.  I don't recall.
20   Q   You never took those test results
21   and brought them to one of your regular
22   physicians, did you?
23   A   No.
24   Q   And have you ever told any health
25   care provider that you had an echocardiogram

Page 104

1    done and it said something about mitral
2    valve regurgitation and maybe mild pulmonary
3    hypertension?
4    A   I don't recall doing that.
5    Q   That's the first time you remember
6    having an echocardiogram done, correct?
7    A   Yes.
8    Q   When was the second time?
9    A   Maybe a year or so ago.  I'm not
10   sure.
11   Q   And this was also scheduled by your
12   attorneys, correct?
13   A   That's correct.
14   Q   Where did you go for that test?
15   A   In New Orleans for that one also.
16   Q   The same place?
17   A   I don't know if it was the same
18   place or not.  I'm not quite sure.
19   Q   But when you say "New Orleans," do
20   you mean in the city of New Orleans?
21   A   In the city.
22   Q   Have you ever gone to the North
23   Shore of Lake Pontchartrain to the Covington
24   area for a test?
25   A   No.

51a98fd4-deec-4d77-9222-c5c9c6dd7a6b

William E. Shell M.D.
Laboratory Industry Services L.L.C.
2980 Beverly Glen Circle, Suite 301
Los Angeles, CA 90077
Tel. 310.474.9809 • Fax 413.674.4911

Echocardiogram Video Tape Review of Bridgette Ketchens

Tape Date:     12/27/99

Echocardiogram Report Date:     10/31/00

Bridgette Ketchens underwent two-dimensional echocardiography. This was an inadequate study for complete evaluation of pulmonary artery pressure. Findings included normal valve architecture. There was moderate mitral regurgitation with an rja/laa ratio of 35%. There was mild tricuspid regurgitation; this was assessed by color flow. There was no aortic insufficiency. The estimated pulmonary artery pressure was 55 mm Hg using the acceleration time method. The estimated pulmonary artery pressure could not be calculated using the Bernoulli equation.  No doppler data of the tricuspid regurgitation was generated. The ejection fraction was 68%.

Impressions:

1.  Normal valve architecture
2.  Moderate mitral regurgitation
3.  Mild tricuspid regurgitation; assessed by color flow
4.  Pulmonary hypertension

William Shell M.D.

0045

DEFENDANT'S
EXHIBIT
D

ORANGE FORM #2

THIS FORM MUST BE USED BY ANY PERSON WHO WANTS TO EXERCISE AN
INTERMEDIATE OPT-OUT RIGHT UNDER THE SETTLEMENT AGREEMENT
WITH AMERICAN HOME PRODUCTS CORPORATION.

THIS FORM MUST BE COMPLETED IN ITS ENTIRETY, SIGNED, DATED, AND
RETURNED TO THE CLAIMS ADMINISTRATOR(S) AND AMERICAN HOME PRODUCTS
CORPORATION WITHIN THE TIMES PROVIDED IN THE SETTLEMENT AGREEMENT
AND NOTICE OF SETTLEMENT.

1.    State your name, address and telephone number:

_Bridgette Gibson Ketchens_
NAME

_441 N.W. 3rd St #14_
ADDRESS

_Reserve, La. 70084_
CITY   STATE      ZIP

_(504) 536-7160_
TELEPHONE NUMBER (WITH AREA CODE)

2.    If you have a lawyer, list his/her name, office address, telephone number, fax
number and E-mail address, if any:

The Law Offices of Daniel E. Becnel, Jr.
NAME    Robert G. Harvey, Sr.
        Darlene M. Jacobs

106 West Seventh Street, Post Office Drawer "H"
ADDRESS

Reserve, Louisiana  70084
CITY   STATE        ZIP

(504) 536-1186
TELEPHONE NUMBER (WITH AREA CODE)

(504) 536-6445
FAX NUMBER

dbecnel@gs.verio.net
E-MAIL ADDRESS


DEFENDANT'S
EXHIBIT
E

ORANGE FORM #2

3.   CERTIFICATION: I have had an opportunity to read the Notice transmitted to class members in connection ith the nationwide Class Action Settlement with American Home Products Corporation and to consult with physicians and attorneys concerning the terms and conditions of the proposed Class Action Settlement. I HEREBY CERTIFY SUBJECT TO PENALTIES OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF, MY CIRCUMSTANCES QUALIFY ME TO EXERCISE AN INTERMEDIATE OPT-OUT RIGHT UNDER THE SETTLEMENT AGREEMENT. I HEREBY KNOWINGLY AND PERMANENTLY RELINQUISH, WAIVE AND GIVE UP ALL OF THE RIGHTS WHICH I WOULD OTHERWISE HAVE HAD AS A CLASS MEMBER UNDER THE SETTLEMENT AGREEMENT WITH AMERICAN HOME PRODUCTS CORPORATION AND I AFFIRMATIVELY AND FOREVER OPT OUT OF THE CLASS WITH FULL KNOWLEDGE OF THE LEGAL, FACTUAL AND MEDICAL CONSEQUENCES OF MY ACTIONS.

1/15/01
———————————
DATE

*Bridgette G Ketchens*
———————————
SIGNATURE

RETURN THIS FORM TO BOTH THE CLAIMS ADMINISTRATOR(S) AND AMERICAN ME PRODUCTS CORPORATION AT THE FOLLOWING ADDRESSES:

Claims Administrators
Diet Drug Settlement
Post Office Box 7939
Philadelphia, Pennsylvania  19101

American Home Products Corporation
c/o Michael T. Scott, Esq.
MDL Liaison Counsel for AHP
One Liberty Place
1650 Market Street
Philadelphia, Pennsylvania  19103

ORANGE FORM #2



# *TCHEFUNCTE CARDIOVASCULAR ASSOCIATES*

A PROFESSIONAL MEDICAL CORPORATION

## *FRANK VOELKER III, MD*

## *GABRIEL P. LASALA, MD, F.A.C.C.*

101 E. Fairway Drive, Suite 504
Covington, LA 70433
(985) 871-8227

## ECHOCARDIOGRAPHIC REPORT

NAME: BRIDGETTE KETCHENS AGE: 42  DATE: 7/21/01

**M-MODE INTERPRETATION:**

| | | | | |
|---|---|---|---|---|
| RVDd | __ | cm(0.7-2.7) | LVEF % | (>55%) |
| LVDd | 4.4 | cm(3.5-5.7) | LAD 4.0 | cm(1.9-4.0) |
| LVDs | 2.98 | cm(2.6-3.9) | AO 2.7 | cm(1.9-4.0) |
| IVSd | 1.1 | cm(0.6-1.2) | AoV vel 1.3 | (1.0-1.7msec) |
| IVSs | 1.5 | cm(0.7-1.1) | | |

Aortic valve: NORMAL .
Mitral valve:  NORMAL .
Septal motion:  NORMAL .
Posterior wall motion:  NORMAL .
Quality of recording:  FAIR.

**2-D Interpretation**
1. Normal left ventricular size.
2. Normal left ventricular systolic function with an ejection fraction of approximately 55%.
3. Mild concentric left ventricular hypertrophy.

**Doppler Interpretation**
4. Mild mitral regurgitation.
5. Mild aortic and pulmonic insufficiency.

Gabriel P. Lasala, M.D.
Cardiologist

0018



DEFENDANT'S
EXHIBIT
F

(Official Form 1) (9/97) West Group, Rochester, NY

| FORM B1 | **United States Bankruptcy Court** | **Voluntary Petition** |
|---|---|---|
| | _EASTERN_  District of _LOUISIANA_ | |

| Name of Debtor (If individual, enter Last, First, Middle): | Name of Joint Debtor (Spouse)(Last, First, Middle): |
|---|---|
| *Ketchens Sr, Roland A.* | *Ketchens, Bridgette G* |

| All Other Names used by the Debtor in the last 6 years (include married, maiden, and trade names): *NONE* | All Other Names used by the Joint Debtor in the last 6 years (include married, maiden, and trade names): *NONE* |
|---|---|

**01-16243**

| Soc. Sec./Tax I.D. No. (If more than one, state all): *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* | Soc. Sec./Tax I.D. No. (If more than one, state all): *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* |
|---|---|
| Street Address of Debtor (No. & Street, City, State & Zip Code): *441 N.W. 3rd Street #14* *Reserve LA  70084* | Street Address of Joint Debtor (No. & Street, City, State & Zip Code): *same* |
| County of Residence or of the Principal Place of Business: *St. John the Baptist* | County of Residence or of the Principal Place of Business: *St. John the Baptist* |
| Mailing Address of Debtor (If different from street address): *SAME* | Mailing Address of Joint Debtor (If different from street address): *SAME* |
| Location of Principal Assets of Business Debtor (If different from street address above): *NOT APPLICABLE* | |

## Information Regarding the Debtor (Check the Applicable Boxes)

**Venue** (Check any applicable box)

☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

| **Type of Debtor** (Check all boxes that apply) | | **Chapter or Section of Bankruptcy Code Under Which the Petition is Filed** (Check one box) |
|---|---|---|
| ☒ Individual(s)   ☐ Railroad | | ☒ Chapter 7    ☐ Chapter 11    ☐ Chapter 13 |
| ☐ Corporation   ☐ Stockbroker | | ☐ Chapter 9    ☐ Chapter 12 |
| ☐ Partnership   ☐ Commodity Broker | | ☐ Sec. 304 - Case ancillary to foreign proceeding |
| ☐ Other_____ | | |

| **Nature of Debts** (Check one box) | | **Filing Fee** (Check one box) |
|---|---|---|
| ☒ Consumer/Non-Business    ☐ Business | | ☒ Full Filing Fee attached |
| **Chapter 11 Small Business**  (Check all boxes that apply) | | ☐ Filing Fee to be paid in installments (Applicable to individuals only) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form No. 3. |
| ☐ Debtor is a small business as defined in 11 U.S.C. § 101 | | |
| ☐ Debtor is and elects to be considered a small business under 11 U.S.C. § 1121(e) (Optional) | | |

**Statistical/Administrative Information**   (Estimates only)         THIS SPACE IS FOR COURT USE ONLY

☐ Debtor estimates that funds will be available for distribution to unsecured creditors.

☒ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

| Estimated Number of Creditors | 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1000-over |
|---|---|---|---|---|---|---|
| | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |

**Estimated Assets**

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
|---|---|---|---|---|---|---|---|
| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Estimated Debts**

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
|---|---|---|---|---|---|---|---|
| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

DEFENDANT'S EXHIBIT
_G_

(Official Form 1) (9/97) West Group, Rochester, NY

| **Voluntary Petition** | Name of Debtor(s): | FORM B1, Page 2 |
|---|---|---|
| (This page must be completed and filed in every case) | *Roland A Ketchens, Sr. and* *Bridgette G. Ketchens* | |

**Prior Bankruptcy Case Filed Within Last 6 Years (If more than one, attach additional sheet)**

| Location Where Filed: | | |
|---|---|---|
| *NONE* | Case Number: | Date Filed: |

**Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor (If more than one, attach additional sheet)**

| Name of Debtor: | | |
|---|---|---|
| *NONE* | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

## Signatures

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of Debtor (Corporation/Partnership)** |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief avaiable under each such chapter, and choose to proceed under chapter 7.<br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition. | I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.<br><br>The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition. |
| X *Roland A. Ketchens Sr.*<br><sub>Signature of Debtor</sub><br>X *Bridgette N. Ketchens*<br><sub>Signature of Joint Debtor</sub> | X _____<br><sub>Signature of Authorized Individual</sub><br><br>_____<br><sub>Printed Name of Authorized Individual</sub> |
| _____<br><sub>Telephone Number (If not represented by attorney)</sub><br>*8-1-01*<br><sub>Date</sub> | _____<br><sub>Title of Authorized Individual</sub><br>_____<br><sub>Date</sub> |

| **Signature of Attorney** | **Signature of Non-Attorney Petition Preparer** |
|---|---|
| X *(signature)*<br><sub>Signature of Attorney for Debtor(s)</sub><br>*Warren G. Lott #8800*<br><sub>Printed Name of Attorney for Debtor(s)</sub><br>*Warren G. Lott, A.P.L.C.*<br><sub>Firm Name</sub><br>*701 N. Causeway Blvd.*<br><sub>Address</sub><br><br>*Metairie LA  70001*<br>*(504) 834-9882*   *8-1-01*<br><sub>Telephone Number        Date</sub> | I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.<br><br>_____<br><sub>Printed Name of Bankruptcy Petition Preparer</sub><br>_____<br><sub>Social Security Number</sub><br>_____<br><sub>Address</sub> |
| **Exhibit A**<br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)<br>☐ Exhibit A is attached and made a part of this petition. | Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document: |
| **Exhibit B**<br>(To be competed if debtor is an individual whose debts are primarily consumer debts)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.<br>X *(signature)*<br><sub>Signature of Attorney for Debtor(s)</sub><br>*8-1-01*<br><sub>Date</sub> | If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.<br><br>X _____<br><sub>Signature of Bankruptcy Petition Preparer</sub><br>_____<br><sub>Date</sub><br><br>A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. § 110; 18 U.S.C. § 156. |

FORM B6B.(10/89) West Group, Rochester, NY

In re _Roland A Ketchens, Sr. and Bridgette G. Ketchens_ / Debtor    Case No. _____

(if known)

# SCHEDULE B-PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "X" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C-Property Claimed as Exempt.

Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G-Executory Contracts and Unexpired Leases. If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."

| Type of Property | None | Description and Location of Property | Husband—H Wife—W Joint—J Community—C | Current Market Value of Debtor's interest, in Property Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1. Cash on hand. | X | | | |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Hibernia national Bank 8004148860 - checking | C | $ 25.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | vcr | C | $ 50.00 |
| | | washer & dryer | C | $ 100.00 |
| | | 2 color tvs | C | $ 250.00 |
| | | stereo | C | $ 250.00 |
| | | refrigerator, table & 4 chairs | C | $ 350.00 |
| | | 2 queen beds, nightstands, dressers, chest of drawers | C | $ 550.00 |
| | | couch, loveseaaat, coffee table, end table | C | $ 575.00 |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | X | | | |
| 7. Furs and jewelry. | | wedding ring | C | $ 100.00 |
| 8. Firearms and sports, photographic, and other hobby equipment. | | camera | C | $ 40.00 |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Itemize. | X | | | |

Page 1 of 3


DEFENDANT'S EXHIBIT

FORM B6B.(10/89) West Group, Rochester, NY

In re _Roland A Ketchens, Sr. and Bridgette G. Ketchens_____ / Debtor     Case No. _____

(if known)

# SCHEDULE B-PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N o n e | Description and Location of Property | Husband--H Wife--W Joint--J Community--C | Current Market Value of Debtor's Interest, in Property Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 12. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 13. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 14. Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |
| 15. Accounts Receivable. | X | | | |
| 16. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 17. Other liquidated debts owing debtor include tax refunds. Give particulars. | X | | | |
| 18. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property. | X | | | |
| 19. Contingent and non-contingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 20. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 21. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 22. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 23. Automobiles, trucks, trailers and other vehicles. | X | | | |
| 24. Boats, motors, and accessories. | X | | | |
| 25. Aircarft and accessories. | X | | | |
| 26. Office equipment, furnishings, and supplies. | X | | | |
| 27. Machinery, fixtures, equipment and supplies used in business. | X | | | |
| 28. Inventory. | X | | | |
| 29. Animals. | X | | | |
| 30. Crops - growing or harvested. Give particulars. | X | | | |
| 31. Farming equipment and implements. | X | | | |
| 32. Farm supplies, chemicals, and feed. | X | | | |

Page __2__ of __3__

FORM B6B-(10/89) West Group, Rochester, NY

In re _Roland A Ketchens, Sr. and Bridgette G. Ketchens_ _____ / Debtor     Case No. _____

(if known)

## SCHEDULE B-PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N o n e | Description and Location of Property | Husband--H Wife--W Joint--J Community--C | Current Market Value of Debtor's Interest, In Property Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 33. Other personal property of any kind not already listed. Itemize. | X | | | |
| | | | **Total ➤** | **$ 2,290.00** |

Page _3_ of _3_

**(Report total also on Summary of Schedules.)**
**Include amounts from any continuation sheets attached.**

. Form 7 (10/89) West Group, Rochester, NY

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF LOUISIANA
# EASTERN DIVISION

In re *Roland A Ketchens, Sr.*
  *and*
  *Bridgette G. Ketchens*

Case No.
Chapter   7

_____/ Debtor

### STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs.

Questions 1-15 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 16-21. If the answer to any question is "None," or the question is not applicable, mark the box labeled "None." If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

---

### DEFINITIONS

"In business." A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within the two years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or person in control of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed.

"Insider." The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any person in control of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. §101.

**1. Income from employment or operation of business.**

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the two years immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE (if more than one) |
|---|---|

**Year to date: $ 5,647.00**
  **Last Year:   $73,089.00**
 **Year before:**

---

**2. Income other than from employment or operation of business.**

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the two years immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

☒ NONE



DEFENDANT'S
EXHIBIT
_____
1
_____

Form 7 (10/89) West Group, Rochester, NY

**3a. Payments to creditors.**

List all payments on loans, installment purchases of goods or services, and other debts, aggregating more than $600 to any creditor, made within 90 days immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|
| Creditor: Chrysler Financial Address: P O Box 7000, Covington LA 70434 | | $1,722.00 | |

**3b.** List all payments made within one year immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

☒ NONE

**4a. Suits and administrative proceedings, executions, garnishments and attachments.**

List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| Citifinancial Consumer Servies vs. Roland Ketchchens #0124646 "A" | Judgment & Garnishment | 1st Parish Court Jefferson Parish | pending |
| American General Finance vs. Roland & Bridgette Ketchens #43-610 "C" | Money Judgment | 40th JDC | Judgment taken 5/31/01 |
| Finance Center of LaPlace | Suit for money owed | JP Court, St. John the Baptist Parish | pending |

**4b.** Describe all property that has been attached, garnished or seized under any legal or equitable process within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

☒ NONE

**5. Repossessions, foreclosures and returns.**

List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

☒ NONE

**6a. Assignments and receiverships.**

Describe any assignment of property for the benefit of creditors made within 120 days immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

☒ NONE

**6b.** List all property which has been in the hands of a custodian, receiver, or court-appointed official within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

☒ NONE

Form 7·(10/89) West Group, Rochester, NY

**7. Gifts.**

List all gifts or charitable contributions made within one year immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient.(Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

☒ NONE

**8. Losses.**

List all losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of this case or since the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

☒ NONE

**9. Payments related to debt counseling or bankruptcy.**

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| Payee: Warren Lott, Attorney Address: | Date of Payment: 7/01 Payor: debtors | $450.00 fees + $200.00 court costs |

**10. Other transfers.**

List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within one year immediately preceding the commencement of this case.(Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

☒ NONE

**11. Closed financial accounts.**

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within one year immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless spouses are separated and a joint petition is not filed.)

☒ NONE

**12. Safe deposit boxes.**

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within one year immediately preceding the commencement of this case.(Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

☒ NONE

**13. Setoffs.**

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within 90 days preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

☒ NONE

**14. Property held for another person.**

List all property owned by another person that the debtor holds or controls.

☒ NONE

**15. Prior address of debtor.**

If the debtor has moved within the two years immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

☒ NONE

Form 7 (10/89) West Group, Rochester, NY

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of Perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information; and belief.

Date ___8/1/01___                Signature _____

**Roland A Ketchens, Sr.**

Date ___8/1/01___                Signature _____

**Bridgette G. Ketchens**

Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years or both, 18 U.S.C. § 152 and § 3571.

**FeeDueREOPEN, REOPENED**

# U.S. Bankruptcy Court
## Eastern District of Louisiana (New Orleans)
## Bankruptcy Petition #: 01-16243

*Assigned to:* Jerry A. Brown
Chapter 7
Voluntary
No asset

*Date Filed:* 08/02/2001
*Date Reopened:* 04/06/2004
*Date Discharged:*
12/06/2001

**Roland a. Ketchens, Sr.**
441 N.W. 3rd Street #13
Reserve, LA 70084
SSN: xxx-xx-5953
*Debtor*

represented by **Warren G. Lott**
701 North Causeway Boulevard
Metairie, LA 70001
(504) 834-9882
Fax : (504) 831-5360
Email: wglott@aol.com

**Bridgett G. Ketchens**
441 N.W. 3rd Street #13
Reserve, LA 70084
SSN: xxx-xx-8959
*Debtor*

represented by **Warren G. Lott**
(See above for address)

**Aaron E. Caillouet**
104 Acadia Lane
Thibodaux, LA 70301
(985) 446-1284
*Trustee*

**Office of the U.S. Trustee**
400 Poydras Street
Suite 2110
New Orleans, LA 70130
(504) 589-4018
*U.S. Trustee*

| Filing Date | # | Docket Text |
|---|---|---|
| 08/02/2001 | 1 | Voluntary Petition all schedules and statements. . Filing Fees Pd: $155.00. Notice Fee Pd: $30.00. Trustee Fee Pd: $15.00. Receipt No. 00177975. [Bates,E.] (Entered: 08/03/2001) |
| 08/02/2001 | | Mailing Matrix. [Bates,E.] (Entered: 08/03/2001) |
| 08/09/2001 | 2 | Appointment of Interim Trustee, Aaron Caillouet [Boudreaux,M.] (Entered: 08/10/2001) |

**DEFENDANT'S EXHIBIT**

| 08/10/2001 | | First Meeting of Creditors Scheduled For 1:00 9/20/01 At Texaco Center, #2112 Last Day To Oppose Discharge: 11/19/01 [Boudreaux,M.] (Entered: 08/10/2001) |
|---|---|---|
| 08/12/2001 | 3 | Courts BNC Certificate of Service Re: [0-0] First Meeting . # of Notices: 29 were sent out. [bncuser] (Entered: 08/12/2001) |
| 08/27/2001 | 4 | Notice of Appearance And Request For Service Of Notice By Wendy A. Geurin for Creditor Chrysler Financial Co., LLC. [Boudreaux,M.] (Entered: 08/28/2001) |
| 09/26/2001 | 5 | First Meeting Held and Examination of Debtor. [Boudreaux,M.] (Entered: 09/27/2001) |
| 09/26/2001 | 6 | Trustee's Report of No Assets. [Boudreaux,M.] (Entered: 09/27/2001) |
| 09/26/2001 | 7 | Trustee's Disclaimer and Abandonment [Boudreaux,M.] (Entered: 09/27/2001) |
| 09/27/2001 | 8 | Order Granting [7-1] Trustee's Disclaimer and Abandonment . Signed-On Date: 9/27/01 [Boudreaux,M.] (Entered: 09/27/2001) |
| 10/01/2001 | 9 | Reaffirmation Agreement Between Debtor And Chrysler Financial Co., LLC. [Boudreaux,M.] (Entered: 10/02/2001) |
| 11/26/2001 | 10 | Reaffirmation Agreement Between Debtor And Finance Center of LaPlace. [Boudreaux,M.] (Entered: 11/27/2001) |
| 12/06/2001 | 11 | Order Discharging Debtor Roland a. Ketchens, Debtor Bridgett G. Ketchens. Signed-On Date: 11/29/01. [Boudreaux,M.] (Entered: 12/06/2001) |
| 12/10/2001 | 12 | BNC Certificate of Mailing - Order of Discharge. Number of notices mailed: 33 (related document(s)11). (Boudreaux, M) (Entered: 12/11/2001) |
| 01/28/2002 | 13 | Order Closing Case Signed on 12/10/01. (Boudreaux, M) (Entered: 01/28/2002) |
| 01/28/2002 | | Bankruptcy Case Closed. (Boudreaux, M) (Entered: 01/28/2002) |
| 04/03/2004 | 14 | Motion to Appoint Trustee, Application to Defer Fee, Motion to Withdraw Document, Motion to Reopen Chapter 7 Case. Receipt Number O, Fee Amount $155. Filed by Aaron E. Caillouet on behalf of Aaron E. Caillouet (RE: (related document(s)[6] Chapter 7 Trustee's Report of No Distribution, ) (Caillouet, Aaron) (Entered: |

| | | 04/03/2004) |
|---|---|---|
| 04/06/2004 | 15 | *Wrong PDF Noticed Out* Order Granting Motion to Appoint Trustee, Granting Application to Defer Payment, Granting Application to Withdraw Trustee's Report of No Distribution, Granting Motion To Reopen Chapter 7 Case (RE: related document (s)14 filed by Trustee Aaron E. Caillouet) Signed on 4/6/2004. (Boudreaux, M) Modified on 4/12/2004 (Kirshbom, C). (Entered: 04/06/2004) |
| 04/08/2004 | 16 | BNC Certificate of Mailing - PDF Document Service Date 04/08/2004. (Related Doc # 15) (Admin.) (Entered: 04/09/2004) |
| 04/12/2004 | 17 | Order Granting (RE: related document(s)14 Motion to Appoint Trustee, , Application to Defer Fee, , Motion to Dismiss/Withdraw Document, , Motion to Reopen Chapter 7 Case, filed by Trustee Aaron E. Caillouet) Signed on 4/6/04 (Kirshbom, C) (Entered: 04/12/2004) |
| 04/13/2004 | 18 | Trustee's Notice of Assets & Request for Notice to Creditors Proofs of Claims due by 7/19/2004. (Caillouet, Aaron) (Entered: 04/13/2004) |
| 04/14/2004 | 19 | BNC Certificate of Mailing - PDF Document Service Date 04/14/2004. (Related Doc # 17) (Admin.) (Entered: 04/15/2004) |
| 04/16/2004 | 20 | Re-Appointment of *Aaron E. Caillouet, case reopened,* Trustee by U.S. Trustee. Aaron E. Caillouet added to the case. Filed by Office of the U.S. Trustee (U.S. Trustee, Office of the) (Entered: 04/16/2004) |
| 04/16/2004 | 21 | BNC Certificate of Mailing. Service Date 04/16/2004. (Related Doc # [18]) (Admin.) (Entered: 04/17/2004) |
| 04/30/2004 | 22 | Application to Employ Susan Earnest as Attorney Filed by Aaron E. Caillouet on behalf of Aaron E. Caillouet (Caillouet, Aaron) (Entered: 04/30/2004) |
| 05/03/2004 | 23 | Order Granting Application to Employ Susan Earnest as Special Counsel (RE: related document(s)22 Application to Employ filed by Trustee Aaron E. Caillouet) Signed on 5/3/2004. (Boudreaux, M) (Entered: 05/03/2004) |
| 05/05/2004 | 24 | BNC Certificate of Mailing - PDF Document Service Date 05/05/2004. (Related Doc # 23) (Admin.) (Entered: 05/06/2004) |
| 02/16/2005 | 25 | Trustee's Interim Status Report *TR:2.* (Caillouet, Aaron) (Entered: 02/16/2005) |
| | | |

| 02/18/2005 | 26 | Notice of Trustee's Intent to Disclaim and Abandon Filed by Aaron E. Caillouet (Caillouet, Aaron) (Entered: 02/18/2005) |
| 02/18/2005 | 27 | Notice of Hearing with Certificate of Service Filed by Aaron E. Caillouet (RE: related document(s)26 Notice of Trustee's Intent to Disclaim and Abandon filed by Trustee Aaron E. Caillouet). Hearing scheduled for 3/30/2005 at 09:00 AM at 500 Poydras Street, Suite B-705. (Caillouet, Aaron) (Entered: 02/18/2005) |
| 03/30/2005 | 28 | Order Approving Disclaimer of Property Signed on 3/30/2005(RE: related document(s)26 Notice of Trustee's Intent to Disclaim and Abandon filed by Trustee Aaron E. Caillouet) (Boudreaux, M) (Entered: 03/30/2005) |
| 03/30/2005 | 29 | Trustee's Report of No Distribution: Trustee of this estate reports and certifies that the trustee has performed the duties required of a trustee under 11 U.S.C. 704 and has concluded that there are no assets to administer. (Caillouet, Aaron) (Entered: 03/30/2005) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/01/2005 10:34:44 | | |
| **PACER Login:** | ms0050 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 01-16243 Fil or Ent: Fil Doc From: 0 Doc To: 99999999 Term: y Links: n Format: HTMLfmt |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

# *United States Bankruptcy Court*
## *Eastern District of Louisiana*

DOCKETED

*In re*

DEC 6 2001

*Bankruptcy Case No.*

*Roland a. Ketchens Sr.*
*Bridgett G. Ketchens*

WARREN A. ~~CROTZ, JR., CLERK~~
~~UNITED STATES BANKRUPTCY COURT~~
~~NEW ORLEANS, LA.~~

*01-16243*
*Section B*

## *ORDER DISCHARGING DEBTOR*

It appearing that a petition commencing a case under title 11, United States Code, was filed by or against the person named above on <u>08/02/01</u>, and that an order for relief was entered under chapter 7, and that no complaint objecting to the discharge of the debtor was filed within the time fixed by the court [or that a complaint objecting to discharge of the debtor was filed and, after due notice and hearing, was not sustained];

## *IT IS ORDERED that*

1.   *The above-named debtor is released from all dischargeable debts.*

2.   *Any judgment heretofore or hereafter obtained in any court other than this court is null and void as a determination of the personal liability of the debtor with respect to any of the following:*

   (a)   *debts dischargeable under 11 U.S.C. § 523;*

   (b)   *unless heretofore or hereafter determined by order of this court to be nondischargeable, debts alleged to be excepted from discharge under clauses (2), (4) and (6) of 11 U.S.C. § 523(a);*

   (c)   *debts determined by this court to be discharged.*

3.   *All creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void by paragraph 2 above are enjoined from instituting or continuing any action or employing any process or engaging in any act to collect such debts as personal liabilities of the above-named debtor.*

*Dated: November 29, 2001*

*BY THE COURT*

*J. A. Brown*

*Bankruptcy Judge*

P-11

DEFENDANT'S
EXHIBIT
K

BRIDGETTE  KETCHENS          FEBRUARY  16 , 2004   CHERAMIE  VS  AMERICAN HOME PRODUCTS

61 (Pages 241 to 244)

Page 241

1    discussed here today?
2        A  I don't recall if I did or not.
3        Q   What did the medication look like
4    that you received from Aspen Clinic?
5        A  Blue and white, I think.
6        Q   Was the blue in speckles on a white
7    capsule possibly?
8        A  Possibly.
9        Q   You said it cost a lot.  Do you
10   recall how much you had to pay for the pills
11   and the visit?
12       A  A hundred dollars I think.
13       Q   That included the visit and the
14   medication?
15       A  Yes.
16       Q   Did you take all the pills that were
17   given to you in that visit?
18       A  I don't remember.
19       Q   Do recall if you had any negative
20   side effects while you were taking that
21   medication?
22       A  I don't think so.
23       Q   Had you heard about Aspen Clinic
24   from a friend or was it something you
25   just  -

Page 242

1        A  Advertisement on television.
2        Q   And just that one visit about a year
3    ago you said?
4        A  Yes.
5        Q   What about another weight loss
6    clinic called Alpha Clinic?
7        A  Not that I recall.
8        Q   One called American Medical Group
9    Weight Loss Clinic?
10       A  Not that I recall.
11       Q   One called Professional Physicians
12   Weight Loss Clinic?
13       A  Not that I know of.
14       Q   Okay.  To your knowledge, have you
15   spoken to any representative or an employee
16   of Rugby Laboratories?
17       A  No.
18       Q   Have you spoken to any
19   representative or an employee from Geneva
20   Pharmaceuticals to your knowledge?
21       A  No.
22       MS. DUAY:
23            That's all the questions I have.
24       Thank you.
25

Page 243

1    MS. EARNEST:
2            Bridgette, I'm going to have you
3    sign -- these are medical
4    authorizations.  Charlie's given us
5    five new authorizations.  We're
6    allowing clients to do it because
7    some of the other ones that you
8    signed are  - they've lost, not
9    Charlie, but Wyeth.
10           They got lost in the black hole.
11   So we are allowing clients to sign
12   some more.  But that's what these
13   are.  They're just medical
14   authorizations you've signed before.
15   MR. PENOT:
16           We'll just put on the Record
17   that I don't have any basis to
18   object to or state that what Ms.
19   Earnest said was incorrect, but I
20   will say that I do know that
21   additional reasons that they're
22   needed is some providers require,
23   although it's not in the law,
24   authorizations dated within a
25   certain time period from the request

Page 244

1    as well as there are still some
2    number of providers that we need to
3    get some pharmacy records from it
4    looks like in the case of this
5    plaintiff.
6        EXAMINATION
7    BY MR. PENOT:
8        Q   Ms. Ketchens, I just want to make
9    sure I have the right people.  Did you
10   and/or you and your husband file for
11   bankruptcy, like, within the past ten years?
12       A  Yes.
13       Q   Okay.  And that would have been  -
14   Who was your lawyer?
15       A  What is his name?  Oh, I can't think
16   of his name.  Let me see if I have it
17   somewhere?
18       Q   Did you receive your discharge do
19   you know?
20       A  Yes.
21       Q   Was it a Chapter 13?
22       A  What's the difference?
23       Q   There are three different  - at
24   least likely to your situation, there are
25   likely three possible ways of filing

DEFENDANT'S
EXHIBIT

# McGlinchey Stafford PLLC

DEBORAH A. VAN METER
(504) 596-2741
Fax (504) 596-2800
dvanmeter@mcglinchey.com

KAM Copy

NEW ORLEANS
HOUSTON
BATON ROUGE
JACKSON
CLEVELAND
MONROE
DALLAS

March 25, 2004

**Ms. Buffy Martinez**
O'Quinn, Laminack & Pirtle
2300 Lyric Centre Building
440 Louisiana
Houston, TX 77002

RE:    In re Diet Drugs Products Liability Litigation, MDL Docket No. 1203; *Cheramie v. AHP, et al.* (Porche Intervenors), transferred from United States District Court for the Eastern District of Louisiana, Civil Action No. 02-0147; removed from 17th Judicial District Court, Parish of Lafourche, State of Louisiana, Docket No. 90899

Claims of Bridgette Ketchens

Dear Buffy:

The purpose of this letter is to advise you of certain facts concerning the case of Bridgette Ketchens, one of the Louisiana plaintiffs in the MDL, that became apparent following her deposition. As a result, Wyeth is requesting that Ms. Ketchens voluntarily dismiss her case.

During the course of Ms. Ketchens's February 16, 2004 deposition, she acknowledged that, after the accrual of her claims against Wyeth, she and her husband filed for chapter 7 bankruptcy relief in the United States Bankruptcy Court for the Eastern District of Louisiana. Although Ms. Ketchens had clear knowledge of the facts underlying her claim against Wyeth at the time of her bankruptcy filing, our review of the record of her bankruptcy case indicates that she did not include in her bankruptcy schedules any possible claim against Wyeth, even if then contingent and unliquidated. Ms. Ketchens subsequently received a chapter 7 discharge and her bankruptcy case was closed. Now, Ms. Ketchens is attempting to assert claims in the referenced proceeding against Wyeth based on a cause of action that accrued prior to her bankruptcy. Under these circumstances and well-settled precedent, Ms. Ketchens will be estopped from asserting her claims against Wyeth. At a very minimum, she is not the proper party in interest to assert the claims, as only her bankruptcy trustee has the ability to do so. We request, therefore, that after you review and confirm the facts and law cited in this letter, you agree to the voluntary dismissal of Ms. Ketchens's action.



DEFENDANT'S
EXHIBIT
M

Ms. Buffy Martinez
March 25, 2004
Page 2

**Facts Concerning Ms. Ketchens's Claim against Wyeth and
the Filing of her Bankruptcy Proceeding**

The facts relevant to Ms. Ketchens's claim and her subsequent bankruptcy filing are as
follows:

- **March 1997 to May 1997** — plaintiff is prescribed Redux; pharmacy records obtained to
  date reflect only 60 pills dispensed; last possible Redux prescription is in May of 1997; at
  her deposition plaintiff testified she did not finish taking all of her last prescription of
  Redux

- **Approximately September 1997** — although not specifying precise time she heard the
  news reports, plaintiff acknowledged in her deposition that she heard that Redux was
  being, or had been, removed from the market

- **December 27, 1999** — plaintiff undergoes first echocardiogram scheduled by her
  prospective lawyers

- **October 31, 2000** — date of William E. Shell, M.D.'s report on plaintiff's
  echocardiogram, finding, among other things, moderate mitral valve regurgitation and
  pulmonary hypertension; plaintiff testified to receiving a copy of this report

- **January 2001** — plaintiff files her "orange form No. 2," exercising intermediate opt-out
  rights and identifying her legal counsel

- **July 21, 2001** — plaintiff undergoes her second lawyer-scheduled echocardiogram

- **August 2, 2001** — plaintiff and her husband file for chapter 7 relief in the United States
  Bankruptcy Court for the Eastern District of Louisiana, Docket No. 01-16243 (copy of
  Petition and Schedules enclosed); no disclosure of possible claim against Wyeth
  contained in any schedules; Schedule B, covering personal property contains the answer
  "none" in response to a request for "Other contingent and unliquidated claims of every
  nature, including tax refunds, counterclaims of the debtor, and rights to set-off claims.
  Give an estimated value of each;" the same is true of Item No. 33 on Schedule B
  concerning "Other personal property of any kind not already listed.  Itemize.";  also
  Statement of Financial Affairs, Item 4A, calls for "Suits and administrative proceedings,
  executions, garnishments and attachments;" this item calls for a listing of "all suits and
  administrative proceedings to which the debtor is or was a party within one year
  immediately preceding the filing of this bankruptcy case;"  There is no mention of the
  MDL or any possible individual claim cited in this item.

- **September 26, 2001** — plaintiff's Chapter 7 trustee files a report of no assets.

Ms. Buffy Martinez
March 25, 2004
Page 3

- **December 4, 2001** — plaintiff intervenes in the case of *Cathy Cheramie v. American Home Products Corporation, et al.*, No. 90899 in the 17th Judicial District for the Parish of Laforche, State of Louisiana.

- **December 6, 2001** — plaintiff receives her Chapter 7 discharge.

- **January 28, 2002** — plaintiff's bankruptcy case is closed.

**The Law Concerning Judicial Estoppel for Unscheduled Claims and Right of Former Debtors to Assert Pre-Petition Claims**

Pursuant to 11 U.S.C. § 541(a), all causes of action belonging to a debtor at the commencement of a bankruptcy case becomes property of the bankruptcy estate. Pursuant to Rule 6009 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 323 only the trustee in a chapter 7 case has the capacity to sue or be sued on behalf of the estate. *See Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302 (5th Cir. 2001); *Feist v. Consolidated Freightways Corp.*, 100 F. Supp. 2d 273 (E.D. Pa. 1999); *Frank v. Utica Mut. Ins. Co.*, 109 B.R. 668 (E.D. Pa. 1990); and *Cain v. Hyatt*, 101 B.R. 440, 442 (E.D. Pa. 1989).

Additionally, under 11 U.S.C. § 521(1) "bankruptcy debtors [have] an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims.*" *In Re Coastal Plains, Inc.*, 179 F.3d 197, 207-08 (5th Cir. 1999) (citing 11 U.S.C. § 521(1)) (emphasis in original). The United States Fifth Circuit, in which the transferor court lies, has emphasized that this duty of a debtor in bankruptcy is a continuing one, requiring supplementation if facts change, and requiring disclosure of any possible claim even if contingent and unliquidated. *Id.* In cases such as this one, in which a debtor with clear knowledge of a potential claim fails to schedule the claim in bankruptcy, thereafter obtains a discharge, and subsequently attempts to assert the claim, the Fifth Circuit has held in no uncertain terms that the debtor is judicially estopped from asserting the claim. *See Coastal Plains*, 179 F.3d 204-13.

The Fifth Circuit's *Coastal Plains* decision contains a thorough, recent discussion of the judicial estoppel doctrine as applied in the bankruptcy context. As recently as four months ago, the Fifth Circuit re-affirmed its strict adherence to the dictates of its *Coastal Plains* decision. *See Kamont v. West*, 2003 WL 22477703 (5th Cir. October 31, 2003) (not designated for publication, but pursuant to Fifth Circuit Rule 47.5.4, while not precedent, may be cited as persuasive authority).

In *Coastal Plains*, the Fifth Circuit stated that judicial estoppel "(1) . . . may be applied only where the position of the party to be estopped is clearly inconsistent with its previous one; and (2) that party must have convinced the court to accept the previous position." 179 F.3d at 206. The Fifth Circuit's decisions in *Coastal Plains* and *Kamont* make plain that failure to disclose a known claim, even if contingent, unliquidated and as yet unasserted, satisfies both of

Ms. Buffy Martinez
March 25, 2004
Page 4

the elements of judicial estoppel when the debtor, or someone standing in the debtor's shoes, subsequently attempts to assert an undisclosed claim after having obtained the benefits of a bankruptcy discharge. 179 F.3d at 204-13.

Significantly, the Fifth Circuit's decision in *Coastal Plains* also recognizes that the Third Circuit's case law, the circuit in which the MDL is pending, is in accord with that of the Fifth Circuit. *See Coastal Plains*, 179 F.3d at. 211-12 (discussing Third Circuit cases of *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3rd Cir. 1996); and *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3rd Cir.), cert. denied 488 U.S. 967 (1988)); *see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314 (3rd Cir. 2003). Indeed, the Bankruptcy Court in the very same district in which the MDL is pending has also recognized this same principle of estoppel. *In Re Okan's Foods, Inc.*, 217 B.R 739 (Bankr. E.D. Pa. 1998).

In its *Coastal Plains* decision, the Fifth Circuit also acknowledged that other courts have imposed the additional requirement that the party to be estopped must have acted intentionally, not inadvertently, in failing to disclose the claim. 179 F.3d at 206. The *Coastal Plains* decision, however, establishes that mere assertions of ignorance by a debtor of its disclosure duties or supposed reliance upon legal counsel do not constitute a defense, *if the debtor had knowledge of the facts giving rise to the claims or had motive for their concealment. Id.* at 210 (citing cases from around the country, including from the Third Circuit and the Bankruptcy Court for the Eastern District of Pennsylvania); *see also Kamont*, 2003 WL 22477703 at *3. Here, it is undisputed that, like the debtors in *Coastal Plains* and *Kamont*, Ms. Ketchens clearly knew the facts underlying her claim at the time of her bankruptcy case *and* had a motive to conceal those claims. She was able to obtain a discharge of approximately $21,000 worth of debt, but without sharing any possible proceeds of a settlement or recovery against Wyeth with her creditors.

Finally, it is crystal clear that in circumstances such as these, the debtor has no standing to assert any pre-petition claims. Rather, such claims must be asserted by the trustee. *See Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302 (5th Cir. 2001). This is a principle also honored in Louisiana state courts, the courts from which Ms. Ketchens's case was removed. *See Trowbridge v. Fascio*, No. 98-C-1311, 718 So.2d 1025 (La. App. 4th Cir. 9/9/98); and *Jones v. Chrysler Credit Corp.*, 417 So.2d 425 (La. App. 1st Cir.), *writ denied*, 420 So.2d 456 (1982), *cert. denied*, 459 U.S. 1114 (1983). The same is true of the U.S. Third Circuit and the Eastern District of Pennsylvania. *See, e.g., Feist*, 100 F. Supp. 2d at 274-75; and *Frank*, 109 B.R. at 669.

Ms. Buffy Martinez
March 25, 2004
Page 5


**Conclusion**

  After you have and an opportunity to review the facts and the cited case law, please let us
have your decision concerning voluntary dismissal of this action.

        Very truly yours,

        **McGlinchey Stafford, PLLC**

        Deborah A. Van Meter


DVM/mmb
cc:  Ann Koppel, Esq.
   Tom Stoever, Esq./Mike Rollin, Esq.
   All Counsel of Record
#473560